26cr92 (MJD/DLM)

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | **INDICTMENT** |
| Plaintiff, | 18 U.S.C. § 1347 |
| | 18 U.S.C. § 2 |
| v. | 18 U.S.C. § 1349 |
| | 18 U.S.C. § 982(a)(7) |
| MUHAMMAD ABDULQADIR OMAR, and | 21 U.S.C. § 853(p) |
| IBRAHIM BASHIR ABDI, | 28 U.S.C. § 2461(c) |
| Defendants. | |

**THE UNITED STATES GRAND JURY CHARGES THAT:**

At all times relevant to this Indictment:

1.      Medicaid was a health and long-term care coverage program jointly financed by states and the federal government pursuant to the Social Security Act of 1965 that provided benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. The Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services, was responsible for overseeing Medicaid in participating states, including Minnesota.

2.      Individuals who received benefits under Medicaid were referred to as "recipients."



SCANNED

MAY 12 2026

U.S. DISTRICT COURT MPLS

*United States v. Omar, et al.*

3.      Medicaid was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

4.      Each state, including Minnesota, established and administered its own Medicaid program and determined the type, amount, duration, and scope of services covered within broad federal guidelines.

5.      Medicaid covered the costs of medical services and products ranging from routine preventive medical care for children to institutional care for the elderly and disabled. Service providers were authorized to submit claims to Medicaid only for services they actually rendered and were required to maintain patient records verifying the provision of services. By submitting a claim, the provider certified, among other things, that the services were medically necessary, rendered to the patient as represented, and not rendered as a result of kickbacks or bribes.

6.      In Minnesota, Medicaid was administered by the Minnesota Department of Human Services ("DHS").

**A.      Background on Minnesota's Housing Stabilization Services Program**

7.      Beginning in or around July 2020, DHS began operating the Housing Stabilization Services ("HSS") Program ("the Program"), which was funded through the state's Medicaid program. The Program was designed to help seniors and people with disabilities, including mental illness and substance use disorders, find and maintain housing.

8.      The Program permitted reimbursements for four principal kinds of services:

*United States v. Omar, et al.*

(a) Housing consultation, during which a consultant (like a social worker or nurse) helped a recipient complete a DHS form called a Person-Centered, Housing Focused Plan. The form required minimal information. Consultants could bill Medicaid approximately $174 for a consulting session.

(b) Housing transition services, during which a provider helped a recipient plan for, find, and move into housing. Providers could bill approximately $68 per hour of transition services provided.

(c) Housing sustaining services, during which a provider helped a recipient keep their housing after they had moved in (including through behavioral management of the recipient). Providers could bill approximately $68 per hour of sustaining services provided.

(d) Moving expenses of up to $3,000, subject to conditions.

9. The Program had the following requirements to enroll as a provider: (i) be at least 18 years old, (ii) submit enrollment application to DHS, (iii) undergo a background check, and (iv) complete approximately five hours of online training videos.

10. The Program had the following requirements to enroll as a recipient: (i) be at least 18 years old, (ii) have Medicaid coverage, (iii) have a documented disability or "disabling condition," and (iv) be experiencing housing instability. To receive billable services, a recipient meeting these requirements was required to complete a form called a Person-Centered Housing Focused Plan, detailing their housing challenges and needs. Once submitted, the recipient could enroll with a provider, and the provider could start billing the Program.

11. To bill, a provider submitted the names of the recipient serviced, the type of billable service provided, and the number of hours worked.

3

*United States v. Omar, et al.*

## B.    The Defendants

12.    Defendants MUHAMMAD OMAR and IBRAHIM ABDI jointly owned and operated North Home Health Care LLC ("NHHC"), a Minnesota limited liability company. OMAR also owned and operated individually South Home Health Care LLC ("SHHC"), a Minnesota limited liability company.

13.    In or around June 2022, OMAR and ABDI formed NHHC. In or around August 2022, OMAR submitted a Provider Agreement to enroll NHHC as a provider in Minnesota Health Care Programs administered by DHS. OMAR and ABDI represented to DHS in a Provider Profile Report that they were equal owners of NHHC. As equal owners, OMAR and ABDI were responsible for the submission of claims to the HSS Program on behalf of NHHC.

14.    In or around April 2023, OMAR formed SHHC. In or around July 2023, OMAR submitted a Provider Agreement to enroll SHHC as a provider in Minnesota Health Care Programs administered by DHS. OMAR was responsible for the submission of claims to the HSS Program on behalf of SHHC.

15.    In the process of enrolling NHHC and SHHC as providers with DHS, OMAR certified he would not submit false or fraudulent claims. OMAR and ABDI also completed mandatory training instructing them as to the services for which they were permitted to submit claims under the HSS Program.

16.    Through NHHC and SHHC, OMAR and ABDI were supposed to provide housing consulting, transitioning, and sustaining services to qualifying people

4

*United States v. Omar, et al.*

in need. NHHC and SHHC were paid at quarter-hourly rates and with Medicaid dollars based on the services they claimed to provide.

## C.    The Scheme to Defraud the HSS Program

17.    From in or around June 2022 through in or around April 2025, in the District of Minnesota and elsewhere, defendants MUHAMMAD OMAR and IBRAHIM ABDI did knowingly devise and participate in a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

18.    It was the purpose of the scheme for OMAR and ABDI to unlawfully enrich themselves, by, among other things: (a) submitting and causing the submission of false and fraudulent claims to the HSS Program (i) that inflated the number of hours of service actually provided, (ii) for services that were not actually provided, and (iii) for services that were not eligible for reimbursement; (b) concealing the submission of false and fraudulent claims to the HSS Program and the receipt and transfer of proceeds of the fraud; and (c) diverting proceeds of the fraud for the personal use and benefit of OMAR, ABDI, and others, and to further the fraud scheme.

19.    The manner and means by which OMAR and ABDI executed the scheme included, among other things, the following:

*United States v. Omar, et al.*

a.      In or around August 2022, OMAR signed a Provider Agreement with DHS as an "Owner" of NHHC. In that Agreement, OMAR represented that NHHC would submit accurate claims, refund any overpayments for fraudulent billing, and maintain records that disclosed the services that NHHC provided to Medicaid recipients. OMAR signed DHS Provider Agreements with similar representations in or around March 2023 and February 2024.

b.      In or around July 2023, OMAR signed a Provider Agreement with DHS as an "Owner" of SHHC. In that Agreement, OMAR represented that SHHC would submit accurate claims, refund any overpayments for fraudulent billing, and maintain records that disclosed the services that NHHC provided to Medicaid recipients.

c.      In or around November 2022, OMAR and ABDI opened a business checking account at JPMorgan Chase Bank ("JPMC") ending in 7217 in the name of NHHC. In or around April 2023, OMAR and ABDI opened a second business checking account at JPMC ending in 7809 on behalf of NHHC. These accounts were created for the purpose of receiving reimbursement for NHHC's claims for HSS. Defendants OMAR and ABDI were signatories on both accounts.

d.      On September 12, 2023, OMAR opened two business checking accounts at JPMC ending in 7525 and 8656 on behalf of SHHC. DHS and other insurers paid SHHC into these accounts for SHHC's claims for HSS. OMAR was the sole signatory on these accounts.

e.       OMAR and ABDI hired housing coordinators to purportedly provide housing services under the Program to Medicaid recipients. OMAR and ABDI knowingly and willfully submitted, and directed others to submit, claims to Medicaid for HSS purportedly provided to Medicaid recipients on dates and times when, in fact, the assigned housing coordinators were documented as providing services to multiple recipients at the same time.

f.       OMAR and ABDI knowingly and willfully submitted, and directed others to submit, claims to Medicaid for HSS for identical numbers of hours per Medicaid recipient every few days, when, in fact, those services were not actually provided or significantly inflated.

g.       Between in or around August 2024 and in or around May 2025, a compliance manager at NHHC complained to OMAR and ABDI that housing coordinators did not actually meet with Medicaid recipients as required, failed to communicate with recipients, and did not provide services to those recipients as reflected in claims. Despite this notice, OMAR and ABDI did not alter their billing practices.

h.       OMAR and ABDI knowingly and willfully submitted, and directed others to submit, claims to the Program for (i) more services than NHHC and SHHC provided to Medicaid recipients, and (ii) services that NHHC and SHHC did not provide.

i.       OMAR and ABID knowingly and willfully submitted, and directed others to submit, claims to Medicaid for HSS purportedly provided to

Medicaid recipients on dates and times when, in fact, those recipients were hospitalized and could not have received the claimed services.

j.        Between on or about September 7, 2023, and on or about December 30, 2023, OMAR and ABDI submitted, and directed others to submit, claims to the Program for 92 hours of HSS purportedly provided to a Medicaid recipient after the recipient's death.

k.        OMAR and ABDI created records falsifying the services that NHHC claimed that it provided to Medicaid recipients and provided these records to insurers and auditors to justify their false and fraudulent claims. OMAR and ABDI falsified case notes describing services that NHHC purportedly provided to members.

l.        From in or around September 2022 through in or around March 2025, OMAR and ABDI, through NHHC, billed Minnesota Medicaid approximately $3.3 million for HSS purportedly provided to Medicaid recipients and received approximately $3.2 million based on those false and fraudulent claims.

m.        From in or around August 2023 through in or around April 2025, OMAR, through SHHC, billed Minnesota Medicaid approximately $490,000 for HSS purportedly provided to Medicaid recipients and received approximately $480,000 based on those false and fraudulent claims.

n.        OMAR used over $150,000 of the proceeds that NHHC and SHHC fraudulently obtained from the Program to invest in real estate in

*United States v. Omar, et al.*

Nairobi, Kenya, and over $60,000 to lease a Mercedes Benz. ABDI used over $20,000 of the proceeds that NHHC fraudulently obtained from the Program to also invest in real estate in Nairobi, Kenya.

## Count 1
(Conspiracy to Commit Health Care Fraud)

20.    Paragraphs 1 through 20 of this Indictment are re-alleged and incorporated herein.

21.    Between in or around June 2022 and in or around April 2025, in the District of Minnesota and elsewhere, MUHAMMAD ABDULQADIR OMAR, IBRAHIM BASHIR ABDI, and others known and unknown to the Grand Jury, did knowingly and willfully conspire to execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicaid, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicaid, in connection with the delivery of, and payment for, health care benefits, items, and services, by causing the submission of false and fraudulent claims to Medicaid, contrary to Title 18, United States code, Section 1347.

(Title 18, United States Code, Section 1349)

## Counts 2 through 5
(Health Care Fraud)

22.    Paragraphs 1 through 20 of this Indictment are re-alleged and incorporated herein.

*United States v. Omar, et al.*

23.     On or about the dates specified below, in the District of Minnesota and elsewhere, MUHAMMAD ABDULQADIR OMAR and IBRAHIM BASHIR ABDI, aided and abetted by others known and unknown to the Grand Jury, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicaid, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicaid, in connection with the delivery of, and payment for, health care benefits, items, and services, by causing the submission of the following false and fraudulent claims to Medicaid:

| Count | Defendant | Medicaid Recipient | Provider | Approx. Date of Service | Approx. Amount Claimed |
|-------|-----------|--------------------|----------|-------------------------|------------------------|
| 2 | MUHAMMAD OMAR and IBRAHIM ABDI | N.A. | NHHC | 10/18/24 | $137.36 |
| 3 | MUHAMMAD OMAR and IBRAHIM ABDI | S.M. | NHHC | 7/14/23 | $137.36 |
| 4 | MUHAMMAD OMAR and IBRAHIM ABDI | L.H. | NHHC | 8/16/24 – 8/31/24 | $824.16 |
| 5 | MUHAMMAD OMAR | R.W. | SHHC | 1/31/25 | $137.36 |

Each in violation of Title 18, United States Code, Sections 1347 and 2.

*United States v. Omar, et al.*

## FORFEITURE ALLEGATIONS
### (18 U.S.C. § 982(a)(7))

24.     The allegations contained in Counts 1 through 5 of this Indictment are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture against defendants MUHAMMAD ABDULQADIR OMAR and IBRAHIM BASHIR ABDI, pursuant to the provisions of Title 18, United States Code, Section 982.

25.     Pursuant to Title 18, United States Code, Section 982(a)(7), upon being convicted of the crimes charged in Counts 1 through 5 of this Indictment, the convicted defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

26.     If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

_____        _____
UNITED STATES ATTORNEY                 FOREPERSON


_____
LORINDA LARYEA
Chief
Criminal Division, Fraud Section
U.S. Department of Justice

11