UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 26-92 (KMM/DLM)

UNITED STATES OF AMERICA,

Plaintiff,

v.

MUHAMMAD ABDULQADIR OMAR,
AND IBRAHIM BASHIR ABDI,

Defendants.

**PLEA AGREEMENT AND
SENTENCING STIPULATIONS**

The United States of America and Muhammad Abdulqadir Omar (hereafter, the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota and the United States Department of Justice, Criminal Division, Fraud Section (hereafter, "the United States" or "the government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.     **Charges**. The defendant agrees to plead guilty to Count One of the Indictment, which charges the defendant with conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349. The defendant fully understands the nature and elements of the crimes with which he has been charged.

2.     **Factual Basis**. The defendant is pleading guilty because he is in fact guilty of Count One of the Indictment. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

The defendant acknowledges that he and defendant Ibrahim Bashir Abdi ("Abdi"), his coconspirator, agreed to defraud a health care benefit program affecting commerce, as defined

1

in Title 18, United States Code, Section 24(b), that is, Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

Beginning in or around June 2022 and continuing through in or around April 2025, within the District of Minneapolis and elsewhere, defendants knowingly carried out a scheme to defraud the Housing Stabilization Services ("HSS") program, a Minnesota Medicaid health care benefit program affecting commerce, designed to help people with disabilities and addictions find and maintain housing. Defendants submitted false claims for services that were not actually provided or inflated the number of hours of services provided under the HSS program. Defendants concealed the submission of false and fraudulent claims to the HSS program and diverted the proceeds of the fraud for their personal use and benefit.

Specifically, in or around June 2022, defendants formed North Home Health Care LLC ("NHHC"), a Minnesota limited liability company, which they jointly owned and operated. In or around November 2022, defendants opened two business checking accounts at JPMorgan Chase Bank ("JPMC") in the name of NHHC to receive Medicaid reimbursements for NHHC's claims for HSS. In or around April 2023, defendant formed South Home Health Care LLC ("SHHC"), a Minnesota limited liability company, which he owned and operated individually. In or around September 2023, defendant opened two business checking accounts at JPMC in the name of SHHC to receive Medicaid reimbursements for SHHC's claims for HSS.

Defendants enrolled NHHC and SHHC as providers with the Minnesota Department of Human Services ("DHS"). In the process of enrollment, defendant certified that NHHC

and SHHC would submit accurate claims, refund any overpayments for fraudulent billing, and maintain records that disclosed the services that NHHC provided to Medicaid recipients. In addition, defendants completed mandatory training, instructing them as to the services for which they were permitted to submit claims under the HSS program. Through NHHC and SHHC, defendants were supposed to provide housing consulting, transitioning, and sustaining services to qualifying people in need. NHHC and SHHC were paid at quarter-hourly rates and with Medicaid dollars based on the services they claimed to provide.

Defendants hired housing coordinators to purportedly provide housing services under the HSS program to Medicaid recipients. Defendants knowingly and willfully submitted, and directed others to submit, claims to Medicaid for:

a. More HSS than NHHC and SHHC provided to Medicaid recipients and for HSS that NHHC and SHHC did not provide;

b. HSS for identical numbers of hours per Medicaid recipient every few days, when, in fact, those services were not actually provided or significantly inflated; and

c. HSS purportedly provided to Medicaid recipients on dates and times when, in fact, the assigned housing coordinators were documented as providing services to multiple recipients at the same time.

For example, defendants knowingly and willfully submitted, and directed others to submit, claims to Medicaid for HSS purportedly provided to Medicaid recipients on dates and times when, in fact, those recipients were hospitalized and could not have received the claimed services. In addition, between on or about September 7, 2023, and on or about December 30, 2023, defendants submitted, and directed others to submit, claims to the HSS

3

program for 92 hours of HSS purportedly provided to a Medicaid recipient after the recipient's death.

Defendants then created records, including case notes, falsifying the services that NHHC claimed that it provided to Medicaid recipients and provided these records to insurers and auditors to justify their false and fraudulent claims.

Between in or around August 2024 and in or around May 2025, a compliance manager at NHHC complained to defendants that housing coordinators did not actually meet with Medicaid recipients as required, failed to communicate with recipients, and did not provide services to those recipients as reflected in claims. Despite this notice, defendants did not alter their billing practices.

From in or around September 2022 through in or around March 2025, defendants, through NHHC, billed Minnesota Medicaid approximately $3.3 million for HSS purportedly provided to Medicaid recipients and received approximately $3.2 million based on those false and fraudulent claims. From in or around August 2023 through in or around April 2025, defendant, through SHHC, billed Minnesota Medicaid approximately $490,000 for HSS purportedly provided to Medicaid recipients and received approximately $480,000 based on those false and fraudulent claims.

Defendant used over $150,000 of the proceeds that NHHC and SHHC fraudulently obtained from the HSS program to invest in real estate in Nairobi, Kenya, and over $60,000 to lease a Mercedes Benz.

3. **Waiver of Pretrial Motions**. The defendant understands and agrees that he has certain rights to file pretrial motions in this case. As part of this plea agreement and based

upon concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file any pretrial motions in this case.

4.      **Waiver of Constitutional Trial Rights**. The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5.      **Additional Consequences**. The defendant understands that as a result of his conviction, he could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

6.      **Statutory Penalties**. The defendant understands that Count One of the Indictment (conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349) is a felony offense that carries the following statutory penalties:

a.      a maximum of 10 years in prison;

b.      a supervised release term of not more than 3 years;

5

> c. a maximum fine of $250,000, or twice the gross gain or loss caused by the offense, whichever is greatest;
>
> d. restitution as determined by the Court; and
>
> e. a mandatory special assessment of $100.

7. **Revocation of Supervised Release**. The defendant understands that if he were to violate any supervised release condition while on supervised release, the Court could revoke his supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that he be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

8. **Guidelines Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guideline calculations:

> a. <u>Base Offense Level</u>. The parties agree that the base offense level is 6. U.S.S.G. § 2B1.1(a)(2).
>
> b. <u>Specific Offense Characteristics</u>. The parties agree that an 18-level enhancement applies pursuant to Guidelines § 2B1.1(b)(1)(J) because the intended loss exceeded $3.5 million but was less than $9.5 million. The parties agree that a 2-level enhancement applies pursuant to Guidelines § 2B1.1(b)(7) because the defendant was convicted of a federal health care offense involving a government health care program and the loss to the government health care program was more than $1 million. The parties agree that no other specific offense adjustments apply.

6

c.  <u>Chapter 3 Adjustments</u>. The parties agree that a 2-level enhancement applies pursuant to Guidelines § 3B1.3 because the defendant abused a position of public or private trust in a manner that significantly facilitated the commission or concealment of the offense. The parties also agree that a 2-level enhancement applies pursuant to Guidelines § 3C1.1 because defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the prosecution of the instant offense of conviction and the obstructive conducted related to the defendant's offense of conviction and any relevant conduct. The parties agree that, other than acceptance of responsibility, no other Chapter 3 adjustments apply.

d.  <u>Acceptance of Responsibility</u>. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of his intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw his guilty plea after it is entered.

e.  <u>Criminal History Category</u>. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category I. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

7

f.  Guidelines Range. If the adjusted offense level is 27, and the criminal history category is I, the Sentencing Guidelines range is 70-87 months of imprisonment.

g.  Fine Range. If the adjusted offense level is 27, the Sentencing Guidelines fine range is $25,000 to $250,000. U.S.S.G. § 5E1.2(c)(3).

9.  **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable guideline factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines. If the Court determines that the applicable guideline calculations or the defendant's criminal history category are different from that stated above, such a determination shall not provide a basis for the parties to withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

10.  **Agreements as to Sentencing Recommendation**. The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make motions for departures from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a), and to oppose any such motion made by the opposing party. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

11.  **Special Assessment**. The Sentencing Guidelines require payment of a special assessment in the amount of $100.00 for each felony count of which the defendant is convicted. U.S.S.G. § 5E1.3. The defendant agrees that the special assessment is due and payable at the time of sentencing.

12. **Restitution Agreement**. The defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of his crime. The defendant understands and agrees the Court may order the defendant to make restitution to any victim of the scheme regardless of whether the victim was named in the Indictment. The defendant agrees that he owes restitution in the amount of $3,734,835.42, $3,251,122.29 of which he is jointly and severally liable for with defendant Abdi.

13. **Disclosure of Assets**. The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of fines and/or forfeiture ordered by the Court. The defendant agrees to complete a financial statement within two weeks of the entry of his guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate his ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

14. **Forfeiture**. The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(7) and 28 U.S.C. § 2461(c), all property, real or personal, which constitutes

9

or is derived from proceeds traceable to the health care fraud scheme charged in Count 1 of the Indictment.

The defendant agrees that the United States may, at its option, forfeit the property through civil, criminal or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest he may have in the property. The defendant waives all statutory and constitutional defenses to the forfeiture and waives any right to contest or challenge (including direct appeal, habeas corpus, or any other means) such forfeiture, directly or through any company he owns or controls, on any grounds. To the extent the defendant has requested remission or mediation of the forfeiture of the property, he withdraws any such requests. The defendant agrees not to assist any third party in challenging the forfeiture of the property.

The defendant consents to the entry of a money judgment forfeiture in the amount of $2,109,274, which represents the amount of proceeds defendant obtained from the health care fraud scheme alleged in Count 1 of the Indictment. The defendant will receive a credit against the money judgment forfeiture for the net value of all property that is forfeited from him in this matter. The United States reserves the right to seek forfeiture of substitute assets and any additional directly forfeitable property.

15.     **Waivers of Appeal and Collateral Attack**. The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to, the defendant's waiver of the right to appeal guilt or innocence, sentence and restitution, and the constitutionality of the statutes to which the defendant is pleading guilty. The defendant also waives the right to petition under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel.

The defendant also waives the right to collaterally attack his conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. Further, this collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this Plea Agreement that are both substantive and have retroactive effect. For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with his attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

16.    **FOIA Requests**. The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

17.    **Complete Agreement**. This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant. By signing this plea agreement, the defendant acknowledges: (a) that the defendant has read the entire agreement and has reviewed every part of it with the defendant's counsel; (b) that the defendant fully understands this plea agreement; (c) that no promises, agreements, understandings, or conditions have been made or entered into in connection with his decision to plead guilty, except those set forth in this plea agreement; (d) that the defendant is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (e) that the defendant has

11

entered into this plea agreement freely, voluntarily, and knowingly; and (f) that the defendant's decision to plead guilty in accord with the terms and conditions of this plea agreement is made of the defendant's own free will.

Dated: July 7, 2026

DANIEL N. ROSEN
United States Attorney

BY:    MATTHEW C. MURPHY
Assistant United States Attorney

LORINDA LARYEA
Chief, Fraud Section

BY:    Matthew R. Belz
Trial Attorney
Health Care Fraud Unit

Dated: 6/30/26

MUHAMMAD ABDULQADIR OMAR
Defendant

Dated: 6/30/26

TYLER BLISS
Counsel for Mr. OMAR

12