UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | **Defendant's Motion for Review of the Detention Order** |
| Plaintiff; | Case No: 26-CR-92 (KMM/DLM) |
| v. | |
| Muhammad Abdulqadir Omar, Defendant. | |

**Defendant's Motion for Review of the Detention Order**

## I. Introduction

The Defendant, Muhammad Abdulqadir Omar, by his counsel, Tyler Bliss, Esq., respectfully files this motion requesting review of the Detention Order issued on May 29, 2026, in the District of Minnesota. Document 22. This is a serious, high-profile case since it relates to Government Services fraud. Like many other cases arising out of that incident, which is now known worldwide, this case is politically charged and controversial. Yet, there is a presumption in favor of his release under the Bail Reform Act. *See United States v. Salerno*, 481 U.S. 739, 755 (1987) ("[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception"). *See Salerno*, 481 U.S. at 747, 750–52, 107 S.Ct. 2095; *cf. United States v. Kills Enemy*, 3 F.3d 1201, 1203 (8th Cir.1993)

## II. Background

Mr. Omar is an excellent candidate for release until his time of sentencing. He has accepted responsibility for his actions and intends to report for whatever sentence the Court announces. Mr. Omar is a unique defendant, having abundant ties to the community, a history of employment beyond the instant offense, economic stability, a supportive family, and no prior felony convictions. Accordingly, Mr. Omar respectfully requests that this Court overrule the Detention Order imposed by a United States Magistrate Judge in the and release Mr. Omar to home incarceration, under any combination of standard and additional special conditions of bond including but not limited to surrendering his passport, signing an appearance bond, undergoing any counselling that pretrial services deems appropriate and any other condition the Court deems appropriate.

### A. Mr. Omar does not present continued a risk of flight.

The Detention Order determined that Mr. Omar was a flight risk. Document 22. And, indeed, the morning of his eventual arrest he did flee. Ultimately, he was arrested without resistance. Since then, much has changed. He has fully accepted responsibility for his conduct in Court and has accepted that there will be meaningful consequences. The injury he sustained in the initial flight resulted in a broken leg. Due to housing policies in the Sherburne County Jail he was held in Special Housing solitary confinement due to his medical condition until 8/5/2026. While this was psychologically difficult for Mr. Omar, he has emerged with an understanding that he can face the difficulties in front of him.

The Government has cited concerns related to foreign property held by Mr. Omar. Over the last several months Mr. Omar has attempted to liquidate and forfeit the internationally held property in question but has been unable to do so. This said Mr. Omar is willing to sign over any interest in the property to the government or its agents or agree to any form of monitoring that would prevent the liquidation of the asset.

**B. Mr. Omar is not a danger to others and the community.**

The Detention Order made no determination that Mr. Omar is a danger to others and the community. Document 22. Mr. Omar is a man with a Minnesota family, no felony convictions, and no history of violence. The morning of his arrest he and his wife were at home with their daughter who was then only a few-weeks-old. After the conclusion of these proceedings and whatever consequences come, Mr. Omar plans to return home to be part of his family and reenter society to support his family. The conduct here was neither violent or particularly calculating. Mr. Omar's conduct was overt and was fairly quickly detected and after intervention there is no evidence that he reengaged in similar conduct. He is amenable to monitoring in the community.

**A. Home confinement of Mr. Omar would result in more meaningful access to physical therapy and recuperation.**

Mr. Omar will have been confined for over 100 days by the time this matter is heard. During that time he has been recovering from the leg injury he sustained during the attempt to arrest him. He has progressed to a removable walking cast and has been advised to work to increase activities with his leg so that he can recover as much range of

motion and strength as possible. Here where the pled to conduct in non-violent, there is an acceptance of responsibility, and the defendant is agreeable to any condition on his release, home detention balances the concerns of flight with the medical interests of Mr. Omar.

**B. Appropriate conditions can be set to ensure the appearance of Mr. Omar and protect public safety.**

Mr. Omar moves this Court to modify the Detention order to a Release order under the condition that he be held under the following conditions home incarceration, restricted 24-hour-a-day lockdown except for medical necessities and court appearances or other activities specifically approved by the Court; that he surrender his passport and other travel documents, that passport is in Counsel's possession and can be surrendered forthwith; and that he sign an appearance bond. Mr. Omar is also willing to accept any other conditions the Court deems appropriate.

**III. Memorandum of Law and Argument**

There is a general rule of substantive due process that the government may not detain a person prior to a judgement of guilt in a criminal trial. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). This exception of pretrial detention is governed by the Bail Reform Act, 18 U.S.C. § 3142. Still, "[t]he structure of the [bail reform] statute mandates every form of release be considered before detention may be imposed." *United States v. Orta*, 760 F.2d 887, 892 (8th Cir. 1985); see also *United*

*States v. Hansen*, 108 F. App'x 331, 332 (6th Cir. 2004).

Pursuant to the Bail Reform Act, this Court must consider all possible conditions of release, and impose the least restrictive conditions that reasonably assure the defendant will not flee or pose a danger to any other person or the community. A defendant shall be detained pending trial only if the District Court "finds that no condition or combination of the conditions will reasonable assure" either (1) "the appearance of the [defendant] as required" or (2) "the safety of any other person and the community." 18 U.S.C. § 3142(e); see also *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019) ("[i]n common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'").

If the rebuttable presumption under 18 U.S.C. § 3142(e)(2) does not apply, as in the instant case, then, "[w]ith regard to the risk of flight as a basis for detention, the government must prove by a preponderance of the evidence that no combination of conditions will reasonable assure the defendant's presence at the future court proceedings." *United States v. Stewart,* 19 F. App'x 46, 48 (4th Cir. 2001) (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)). Accordingly, under the statutory scheme, "it is only a 'limited group of offenders' who should be denied bail pending trial." *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007) (quoting *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987)).

The factors the Court should consider are listed in the Bail Reform Act: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the person; (3)

the person's history and characteristics, including the person's character, physical and mental condition, family ties, employment, financial resources, community ties, drug abuse history, and criminal record; and (4) the danger to the community posed by the person's release. 18 U.S.C. § 3142(g).

Pursuant to 18 U.S.C. §3145(b), if a person is ordered detained by a magistrate or by a person other than a judge of a court having original jurisdiction over the offense and other than a federal appellate court, that person may file with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly. "When a defendant seeks review of a magistrate judge's order of detention, the district court is bound to review the matter de novo and undertake a complete review of the matter for the purpose of arriving at its own 'independent conclusion.'" *United States v. Williams,* 753 F.2d 329, 331 (4th Cir. 1985).

## IV. Argument and Conclusion

Mr. Omar can be successfully released under a combination of home confinement and supervision that will ensure his attendance at court and protect the community. These conditions can reasonably assure the defendant will not flee or pose a danger to any other person or the community. As delineate above. Mr. Omar has deep ties to the community, a family based in Minnesota and has accepted responsibility for his conduct. He is willing to comply with any requests of the government in regards to his assets and with any conditions requested by the Court.

Mr. Omar has no history of violence or other significant criminal history. He has

accepted responsibility and will continue to respond appropriately to the government and the Court. Mr. Omar respectfully requests the opportunity to recuperate at home and spend time with his infant daughter pending his sentencing.

Respectfully submitted,

Dated: September 18, 2026

*/s/Tyler C. Bliss*

Tyler Bliss #391028
80 S 8th Street
Suite 900
Minneapolis, MN 55402
Telephone: (651)789-0192
tyler@tylerblisslaw.com